51 CCPA

AUDIO FIDELITY, INC., by Change of Name from Audiofidelity, Inc., Appellant,

v.

LONDON RECORDS, INC., Appellee.

Patent Appeal No. 7090.

United States Court of Customs and Patent Appeals.

June 11, 1964.

Lenore B. Stoughton, Mercer L. Stockell, New York City, for appellant.

Kaye, Scholer, Fierman, Hays & Handler, Sidney A. Diamond, New York City, for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board, 134 USPQ 142, granting the petition of appellee, London Records, Inc., to cancel appellant's registration of AUDIO FIDELITY [1] for mechanically grooved phonograph records.

The record shows that Sidney Frey, the predecessor of respondent-appellant doing business as Dauntless International, commenced use of the trademark AUDIO FIDELITY for records in 1954 and that appellant is a corporation which was caused to be incorporated by Mr. Frey on September 6, 1956, the corporation succeeding to the business of its predecessor. There is testimony that in 1957 appellant's gross sales were $2,358,000 on a wholesale level and approximately $5,240,000 on a retail level and that AUDIO FIDELITY is a principal trademark of appellant.

Petitioner-appellee is and for many years has been continuously engaged in the business of manufacturing and selling grooved phonograph records through the United States and elsewhere in interstate and foreign commerce. Pages from various printed publications which appel-

1. The registration, No. 664,428, issued on the Principal Register on July 15, 1958, after the application therefor was amended to claim the benefit of section 2(f) of the Trademark Act of July 5, 1946, and evidence that the mark had become distinctive was submitted.

lee introduced into evidence show that expressions such as the following have been used descriptively in connection with phonograph records and other goods: high fidelity audio system, high fidelity audio power amplifier, hi-fi audio centers, high fidelity audio dealer, quality of the audio, audio response, sound fidelity, sonic fidelity, absolute fidelity, complete fidelity, life-like fidelity, dazzling fidelity, tone fidelity, stereo fidelity, unsurpassed fidelity and utmost fidelity. Moreover, the record shows that appellee has used the following expressions, among others, in advertisements of its records: superlative high fidelity, true fidelity, brilliant high-fidelity, magnificent high-fidelity, dazzling high fidelity, stereo high fidelity and high fidelity stereophonic.

The board granted appellee's petition to cancel the mark AUDIO FIDELITY on the ground that the mark cannot acquire distinctiveness as a trademark. The board stated:

"* * * it is clear that, as defined, the word 'audio' means sound and that the word 'fidelity' means faithfullness [sic]; that both terms have a well recognized meaning in the field of sound reproduction equipment; (5) [2] and that the normal combination thereof would be readily translated as meaning 'faithfullness [sic] of sound', or an equivalent thereof. Additionally, petitioner's [appellee's] record clearly shows that at a date just prior to the time respondent [appellant] filed its showing of distinctiveness in December 1957, two parties were using the identical term 'audio fidelity' in its descriptive context on goods in the same field of trade as respondent; namely, sound equipment. [3] It is also clear from petitioner's record that terms synonymous with 'audio fidelity', such as 'sound fidelity' and 'sonic fidelity' have been and still are frequently being used in the sound equipment field.

"Respondent contends, however, that regardless of any uses of 'audio fidelity' by others on sound equipment, the term has become distinctive of its phonograph records as borne out by the testimony of its witnesses. While respondent's witnesses all stated without hesitation that to them 'AUDIO FIDELITY' meant either the record label, trademark or trade name of respondent, it is interesting to note some of their additional comments on cross-examination as to the meaning of the term. One of the witnesses, for example, admitted that the expression fidelity is used by others in their descriptions of a particular piece of sound equipment. Another stated that as used in context the words 'audio fidelity' would be synonymous with 'high fidelity'. A third witness defined 'audio fidelity' as meaning true sound and stated that 'you hear the words "audio"; you hear the word "fidelity", they might be used in the industry.' The witness followed this assertion with the statement that the above was true during the period 1954 to 1957 and that: 'I can_t [sic] quite honestly recall when I first heard Audio Fidelity used as a label named for these people. The word Audio and the word Fidelity is widely used in

---

2. Footnote 5 of the board's decision reads: "Audio—comb form * * * 2: sound: frequencies in the range of audible sound. Fidelity * * * 3a: The degree to which an electronic device (as a radio receiving set, phonograph, or recording device) accurately reproduces at its output end the signal or wave form received at its imput [sic] end. See: Webster's Third New International Dictionary, 1961."

3. Appellee in its brief states that the board inadvertently referred to the use by one of those parties of AUDIO FIDELITY in connection with sound equipment but that the board correctly stated earlier in its opinion that the use by that party was in connection with tape recordings.

the industry.' A fourth witness stated that as used in context on sound equipment the words 'audio fidelity' would mean quality of sound or finest sound.

"In view of the foregoing, it appears quite evident that the term 'audio fidelity' constitutes acceptable usage of the English language to describe sound equipment. Further, on the basis of all the evidence submitted, the term in question was and continues to be an apt descriptive term in the field of sound reproduction and has been so used in the trade. Hence, it cannot acquire distinctiveness as a trademark. * * "

Appellant urges that AUDIO FIDELITY is not merely descriptive, is no more than suggestive, and is entitled to registration as an arbitrary mark. Appellant contends that even if the mark AUDIO FIDELITY should be held merely descriptive, it is properly registered since (a) appellee has neither pleaded nor proved that AUDIO FIDELITY is the common descriptive name of the phonograph records to which the trademark is applied, and (b) appellee has not proved any lack of distinctiveness of appellant's mark and appellant has affirmatively proved distinctiveness.

Appellee argues that the expression "audio fidelity" was merely descriptive of phonograph records at the time when registration was sought and still is merely descriptive of such goods. Appellee urges that the registration of AUDIO FIDELITY was improperly issued since the term had not acquired secondary meaning as of the date the application was amended under section 2(f), and since, even if secondary meaning was acquired, it was merely "de facto secondary meaning" which is not entitled to legal protection.

It is well settled that a mark which is "suggestive" as opposed to "merely descriptive" is a valid technical trademark. It is entitled to protection and to registration without proof of secondary meaning. Keeping this principle in mind, we do not agree with the board that AUDIO FIDELITY is incapable of being a trademark for phonograph records.

"Audio fidelity" means sound faithfulness and as used in connection with phonograph records suggests that the sounds produced by the records very accurately represent the sounds recorded. The trademark is not merely descriptive of phonograph records. It suggests perfection in the function of the records. The words AUDIO FIDELITY place emphasis upon the connotation of "faithfulness" and summon up a suggestion of high quality. The fact that a mark is suggestive and that persons in the trade are capable of analyzing a mark and recognizing that suggestion, does not render the mark descriptive.

The trademark involved here was registered under section 2(f) of the Trademark Act (15 U.S.C. § 1052, as amended). The Patent Office initially found that the trademark was highly descriptive of the goods. Respondent-appellant then produced evidence that, in spite of its descriptiveness, through use by respondent, the trademark had acquired a secondary meaning and, in fact, identified the source of the phonograph records, and claimed the benefit of section 2(f).

Since we find that the trademark is not merely descriptive, but is suggestive, and that on the basis of the evidence of record it has acquired distinctiveness as indicating the source of appellant's goods, we hold that the registration should not have been canceled.

The decision of the board is reversed.

Reversed.

ALMOND, J., concurs in the result.

WORLEY, C. J., sat but did not participate in decision.